Hal W. HARMAN, Plaintiff,

v.

Lawrence B. SCOTT, Metalock Repair Service, Inc., and Lois R. Morrison, Defendants.

Civ. A. No. 930.

United States District Court
S. D. Ohio, E. D.

March 7, 1960.

———◇———

Schmieding & Fultz, Columbus, Ohio, for plaintiff.

Allen & Allen, Cincinnati, Ohio, for defendant.

UNDERWOOD, Chief Judge.

Trial on the merits of this cause was commenced on June 30, 1948, and resulted in an interlocutory judgment in favor of plaintiff holding his patent valid and infringed by defendant, Scott. The judgment order enjoined Scott, his agents, servants, employees and attorneys and those acting in concert or co-operation with them, from continuing the infringement found to exist. An accounting to determine plaintiff's damages was directed and a hearing on accounting was commenced before the Special Master, G. H. Butt, on March 12, 1953, and concluded on March 14, 1953, at which point time for filing briefs was fixed and counsel were directed to submit tentative findings. Thereafter, the Special Master, G. H. Butt, resigned as Standing Master of this Court. The reference to him of this cause was terminated and the cause was referred to John H. Lewis, his successor as Standing Master, by order dated April 30, 1953. No further action has been taken with regard to the accounting, pending final determination of certain motions and applications, hereinafter discussed, with regard to the status of one Lois R. Morrison and Metalock Repair Service, Inc., a New York corporation, as parties to this cause.

On February 11, 1953, plaintiff moved that Metalock Repair Service, Inc., a New York corporation, be added as a party defendant herein. Said motion was pending before the Court prior to and during the aforementioned hearing on accounting. On March 19, 1953, following the hearing on accounting, a motion was filed asking that Lois R. Morrison be added as a party defendant. On March 20, 1953, a motion was filed seeking a temporary restraining order against Scott, Morrison and Metalock Repair Service, Inc., and that same day a temporary restraining order issued. Said order restrained said three parties from disposing of any assets other than in the ordinary day to day conduct of business. Said order also fixed March 25, 1953, as the date for hearing on a motion for preliminary injunction which was then filed on March 23, 1953. The motion came on to be heard on March 25, 1953, at which time Mr. Mahoney, counsel for Scott and appearing specially for Morrison and Metalock, stated that by agreement the matter would be submitted upon the filing of briefs. Mr. Schmieding, who has previously been counsel for the plaintiff and at this point was appearing pro se by leave of the late District Judge Robert R. Nevin, having filed the motion for a preliminary injunction "to prevent immediate and irreparable injury, loss and damage to plaintiff and Warren H. F. Schmieding," agreed to Mr. Mahoney's statement. The Court accepted the agreement of counsel and directed that the matter would be considered as finally submitted upon the filing of briefs at the times agreed upon by counsel. Counsel also agreed that the temporary restraining order, application for which was also filed by Schmieding pro se, should "remain in effect until the courts have opportunity of passing upon the motion for preliminary injunction."

On July 9, 1953, a memorandum of the Court was filed finding plaintiff's motion to add Metalock as a party defendant to be well taken and directing an entry accordingly. An amended memorandum was filed July 22, 1953 (correcting a typographical error) to the same effect. Also, on July 9, 1953, the Court filed a memorandum finding Schmieding's motion to add Morrison as a party defendant to be well taken and directed an entry. In accordance with the Court's directions, orders were submitted and filed sustaining each of these motions on July 28, and July 30, 1953.

Appeals were prosecuted by Morrison and Metalock and on October 20, 1954, the Court of Appeals entered an order remanding the cause to the District Court upon finding that the orders appealed from were not final and, therefore, not appealable orders. The mandates were received and filed by the Clerk of this Court on November 17, 1954.

On October 22, 1954, Metalock and Morrison, appearing specially, moved

that the Court dissolve the temporary restraining order issued on March 20, 1953.

On January 25, 1955, plaintiff moved for a preliminary injunction against Scott, Morrison and Metalock, said motion being almost identical with the motion for a preliminary injunction filed in 1953 by Schmieding, pro se.

On February 3, 1955, plaintiff moved for substituted service of process on Morrison and Metalock by serving summons for each upon John J. Mahoney, Attorney at Law of Columbus, Ohio together with a copy of a Supplemental Complaint which was attached to the motion.

On June 10, 1955, an order was filed sustaining plaintiff's motion for substituted service. On the same day, the Court sustained plaintiff's motion for a preliminary injunction and issued an order for preliminary injunction against Scott, Morrison and Metalock. The Supplemental Complaint, which had been before the Court since February 3, 1955, as an attachment to plaintiff's motion for preliminary injunction and which had been referred to at length in all the briefs, had inadvertently not been filed and docketed. The inadvertence was corrected and the Clerk filed and docketed an original, executed true copy of the Supplemental Complaint on June 17, 1955. Summons and copy of the Supplemental Complaint were then served upon Scott, Morrison and Metalock by serving Attorney John J. Mahoney, personally, at Columbus, Ohio.

On July 11, 1955, Metalock and Morrison appearing specially, moved the Court to dismiss the Supplemental Complaint or in lieu thereof to quash the return of summons. On September 7, 1955, the Court filed a memorandum finding this motion not well taken and directing an entry overruling the same. An order to this effect was submitted and filed on September 21, 1955.

Metalock and Morrison again prosecuted an appeal which was dismissed for lack of jurisdiction because the order appealed from was not appealable. On this appeal, appellants attempted to attack the issuance of the preliminary injunction on June 10, 1955, but the Court of Appeals held that an appeal on this question was out of time. The mandate was received by the Clerk of this Court and filed on July 26, 1956.

On July 26, 1956, Metalock and Morrison, appearing specially, moved the Court to dissolve the preliminary injunction issued June 10, 1955. The motion was briefed and submitted and on June 3, 1957, the Court filed its order overruling the motion. On the same day the Court sustained plaintiff's motion filed August 19, 1955, for an order requiring Metalock and Morrison to answer the Supplemental Complaint and directed said parties to file answers within thirty days. No answers have been filed.

Metalock and Morrison then prosecuted another appeal. In a decision dated July 28, 1958, the mandate of which was received and filed by the Clerk of this Court on September 24, 1958, the Court of Appeals stated: "The order appealed from is set aside and the cause is remanded to the District Court to state its finding of facts and conclusions of law and enter a decree thereon, * * *."

On August 11, 1958, upon being advised of the decision of the Court of Appeals, this Court directed a letter to all counsel in the case requesting submission of tentative findings of fact and conclusions of law to assist the Court in complying with the decision of the Court of Appeals.

On September 25, 1958, tentative findings on the question were submitted by Attorney Schmieding and designated as being on behalf of plaintiff. Tentative findings on this phase of the case have never been submitted by or on behalf of Scott, nor by or on behalf of Metalock and Morrison, appearing either specially or generally. Instead, a paper entitled "Response to Court's Request for Findings or Fact and Conclusions of Law" was filed on September 29, 1958, the purport of which is that the case is pending before the Special Master on accounting and is "awaiting his report on

the findings of fact and conclusions of law filed with him, before it can proceed to judgment."

Also on September 29, 1958, Metalock and Morrison, appearing specially, again moved the Court to dismiss the Supplemental Complaint and dissolve the preliminary injunction of June 10, 1955. Their motion to dissolve the preliminary injunction (filed July 26, 1955 originally and being the motion upon which their last appeal was based) was filed as an exhibit to this motion.

On October 6, 1958, plaintiff moved for "Interlocutory Judgment on the Pleadings" on the ground that Metalock and Morrison had admitted all the allegations of the Supplemental Complaint by failing to comply with the Court's order of June 3, 1957 which gave them thirty days from that date in which to answer.

Having stated some of the background of the case, the Court now, in compliance with the mandate of the Court of Appeals, makes the following preliminary findings of fact and conclusions of law based upon the record and the transcripts of evidence taken herein at the trial presided over by the late District Judge Robert R. Nevin and at the hearing on accounting presided over by Special Master, G. H. Butt, since resigned:

### Findings of Fact:

1. Scott failed to produce or assist in establishing an account of the infringing business as directed by the Master.

2. Books furnished by Scott could not be used to derive income from the infringing business.

3. Books furnished by Scott, along with his other records, were maintained by and in the charge of Lois R. Morrison from 1939 to the date of the accounting.

4. The infringing business was operated in Columbus, Ohio, from 1939 to sometime in 1946 or 1947, and within the territorial jurisdiction of this Court.

5. During the period of operation in Columbus, Ohio, the infringing business was operated by Scott and Morrison, each exercising control and sharing equally in the profits.

6. This action was commenced June 19, 1944.

7. Scott filed his answer on December 26, 1946 admitting citizenship, residence and jurisdiction of the Court as pleaded.

8. After the suit was commenced, but before trial on the merits, the infringing business was removed to Long Island City, New York and was operated for a short time as Metalock Casting Repair Service.

9. Metalock Casting Repair Service operated the infringing business in the same fashion as the Columbus operation, and was controlled by Scott and Morrison, who shared equally in the proceeds.

10. Under the laws of New York, a corporation styled Metalock Casting Repair Service, Inc. was chartered on March 28, 1946.

11. On January 11, 1953, the corporate name was changed to Metalock Repair Service, Inc.

12. By an agreement dated October 1, 1947, the infringing business being operated as Metalock Casting Repair Service was transferred to Metalock Casting Repair Service, Inc. "along with all assets (except patent) and liabilities."

13. Scott and Morrison initiated the formation of the corporation, and were both incorporators thereof, Scott becoming president and Morrison secretary-treasurer.

14. In 1947 Scott was to receive 30 shares of stock in the corporation in exchange for the transfer of assets of the infringing business having a value of about $91,000.

15. Scott could not state whether he had ever actually received said 30 shares of stock.

16. Morrison stated by affidavit that Scott owned no stock of the corporation after September 6, 1948.

17. Between October 1, 1947 and September 6, 1948, Morrison had acquired "most of the stock" of the corporation.

18. In 1952 Scott was stripped of assets and had no stock nor any appreciable assets of any kind to which plaintiff could look for satisfaction of damages which might be found due him upon an accounting to be conducted in accordance with the Court's Interlocutory Judgment of 1950.

19. In 1947, before the trial on the merits before Judge Nevin, and probably during 1948 up to and including the time of trial, Scott owned or was entitled to ownership of 30 shares of stock valued at $91,000 of a corporation which employed 35 employees, had licensees throughout the United States (with one in England for Europe and one in Norway), and was housed in a building valued at $250,000.

20. Since about the time of the trial or within a short time thereafter, Morrison by virtue of having acquired "most of the stock" of the corporation, had become endowed with virtually complete ownership of the corporate assets.

21. Morrison obtained "most of the stock" in exchange for no known consideration or value other than as stated by Scott, because "she had it coming to her."

22. Morrison and Scott, long united in business and in their concerted efforts to avoid the effects of this litigation, were presumably united in marriage sometime prior to July 20, 1955 since she filed affidavits that date signed "Mrs. Lawrence B. Scott nee Lois R. Morrison."

23. Scott had legal and accounting expenses in 1946 of in excess of $7,500; in 1947 of approximately $1,400; and when asked whether he had legal expenses in 1948, 1949, 1950 and 1951 he replied: "Personally, no sir."

24. Metalock paid all legal expenses on appeal.

25. It is reasonable to infer from the record that Metalock paid legal expenses in 1948 for Scott which he did not incur "personally", i.e. during the trial of this case on the merits, and the Court so finds.

26. Morrison had a direct interest in the outcome of this litigation from its inception by virtue of her association as a partner with Scott in the infringing business in Columbus, Ohio; her role as secretary-treasurer of the transferee corporation and owner of "most of the stock" which she acquired on or before September 6, 1948; and her role, more recently acquired, as wife of the defendant, Scott.

27. Metalock had a direct interest in the outcome of this litigation from the time of its birth under the auspices of the New York Corporation statutes by virtue of its very name which had since 1939 been utilized by Scott and Morrison and was identified as a "trade name" well known among those skilled in the art of casting repair, and which name was commonly used to signify particular repair devices which were the basis of this action and were held to be infringing devices.

28. Metalock had an interest equivalent to Scott's and Morrison's, since at various stages of this corporate "shell game" one or the other, to the exclusion of all others, controlled the corporation until finally Morrison "grabbed the brass ring" and ended up with "most of the stock."

29. Metalock had a direct interest in this litigation because of its many licensees who were using the repair devices, the probable cancellation of licenses because of licensees' fear of future infringement suits by plaintiff, if successful here, against those individual licensees, and the resulting loss of royalties from use of the Metalock process and loss of revenue from sales of locks.

30. Morrison and Scott were identified with each other in interest and privity before, at and since the commencement of this action in 1944.

31. After the formation of the corporation in 1946, Morrison, Scott and Metalock all were identified with each other in interest and privity, and re-

main so to this day, and all three have participated in and have exercised substantial control over the defense of this litigation to protect their common interests.

32. It is reasonable to infer from the record that the primary purpose of Scott and Morrison in removing their infringing business from Columbus, Ohio (within the jurisdiction of this court) to Long Island City, New York (outside the territorial jurisdiction of this court) was to defeat by collusion any possible recovery by plaintiff based upon the accounting directed and to thwart the jurisdiction and orders of this court, and the Court so finds.

### Conclusions of Law.

1. Scott and Morrison were partners in the operation of the infringing business in Columbus, Ohio, from 1939 to 1946 or 1947.

2. Scott and Morrison continued as partners in the operation of the infringing business after its removal to Long Island City, New York.

3. The formation of the corporation, now Metalock Repair Service, Inc., by Scott and Morrison was a collusive effort by the partners to avoid financial responsibility in damages for conducting a business infringing the patent in suit.

4. It can be reasonably concluded that the transfer of assets to Metalock Repair Service, Inc. did not effect a real change of ownership and control thereof, at least for the purposes of this action, and that the formation of said corporation and the attempted transfer show an intent to defraud creditors and particularly the plaintiff herein, and the Court so concludes.

5. The failure of Scott to co-operate fully with the Court and the Master upon hearing, the alienation of assets during the pendency of this action, the change in form and location of the business operation during the pendency of this action, and the general lack of co-operation by Scott and those identifiable with him in privity and interest, to wit: Morrison and Metalock, warrants the Court in concluding that Scott and Morrison engaged in a course of conduct calculated to operate as a fraud upon the Court and a concerted effort to defeat justice in this Court, and the Court so concludes.

6. The allegations of the Supplemental Complaint, in substantial part at least, constitute matters ancillary to the original action for infringement and seek implementation of the accounting, itself an ancillary remedy, and this coupled with the evidence and the facts showing the relationship of Morrison and Metalock with Scott, warranted the Court in adding said Morrison and Metalock as parties defendant pursuant to Rule 21 and/or Rule 25(c) of the Rules of Civil Procedure, 28 U.S.C.A.

7. The allegations made and the supporting evidence of the past dealings of Scott, Morrison and Metalock with regard to transfer of their business and assets, have established good and sufficient cause to believe that injunctive relief was and is necessary and appropriate to protect the interest of the plaintiff in this action from irreparable harm and to protect and aid the jurisdiction of this Court by preventing further disposition of assets, at least until a proper accounting can be conducted and determined, and the Court so concludes.

8. There is sufficient evidence before the Court to warrant the conclusion that both Morrison and Metalock because of their respective and inseparable interests in the outcome of this suit have exercised and continue to exercise at least equal, if not greater, control over the defense of this action than has Scott, and each, therefore, had entered a general appearance and was an actual party herein, long before either was formally named a party defendant upon motion.

9. Having entered general appearances by their direct interest and undisclosed participation, Morrison and Metalock waived service of process and submitted to the in personam jurisdiction of this Court, and it is immaterial whether substituted process upon Mr. Mahoney

**144**

was sufficient to confer such jurisdiction over them, although such process did clearly serve to afford them actual notice of proceedings in this Court.

10. The Court has jurisdiction of the subject matter of this action for patent infringement and of the matters ancillary thereto.

11. The Court has jurisdiction of the parties, Harman, Scott, Morrison and Metalock.

12. The Order for Preliminary Injunction entered June 10, 1955 was necessary and appropriate to protect the interests of the plaintiff and to protect and aid the jurisdiction of the Court, and such order should be continued in full force and effect.

Therefore, based upon the foregoing opinion, findings of fact and conclusions of law, the Court finds that the motion of defendants Morrison and Metalock filed herein on July 26, 1956 to dissolve the injunctive order of June 10, 1955, is not well taken and the same should be and hereby is overruled.

The Court further finds that said defendants' motion filed September 29, 1958, to dismiss the Supplemental Complaint and dissolve the said preliminary injunction is not well taken and should be and hereby is overruled.

It appearing to the Court that there is also pending herein plaintiff's motion for interlocutory judgment on the pleadings against Morrison and Metalock because of their failure to answer the aforementioned Supplemental Complaint within the time previously fixed by the Court upon motion and that said motion ought to be disposed of at this time, the Court is of the opinion that said defendants ought to be afforded an opportunity to raise on appeal any matters which they may desire before being required to answer. Therefore, the Court finds that plaintiff's motion for interlocutory judgment by default against said defendants is not at this time well taken and should be and hereby is overruled.

The Court is also of the opinion that the Court's order of June 3, 1957, directing the defendants Morrison and Metalock to file answers within 30 days from date thereof ought to be set aside. It is therefore ordered that said order dated June 3, 1957 be and it hereby is revoked, set aside and held for naught and plaintiff's motion filed August 19, 1955 seeking said order is at this time overruled without prejudice to plaintiff filing a like motion at a future date if deemed necessary.

This order shall be effective from the date of filing and settlement of journal entry is not required.